**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TONY A. MANLEY, | ) | CASE NO. 3:13-CV-02100 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Tony A. Manley ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his

applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381 et seq. ("Act").  This case is before the undersigned United

States Magistrate Judge pursuant to the consent of the parties entered under the authority

of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final

decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I.    PROCEDURAL HISTORY

On November 27, 2009, Plaintiff filed his application for POD and DIB.  (Transcript

("Tr.") 56.)  On December 2, 2009, he filed his application for SSI.  (Id.)  In both

applications, he alleged a disability onset date of July 1, 2008.  (Id.)  The claims were

denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (Id.)  On June 4, 2012, an ALJ held Plaintiff's hearing.

(Id.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (Id.)  A

vocational expert ("VE") also participated and testified.  (Id.)  On July 27, 2012, the ALJ

found Plaintiff not disabled.  (Tr. 53.)  On August 2, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On September 20, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 16, 17.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in finding that Plaintiff did not meet Listing 12.05; (2) the ALJ's residual functional capacity failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace; and (3) the ALJ erred in finding that Plaintiff was capable of performing work at the light exertional level.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in October 1962 and was 45-years-old on the alleged disability onset date.  (Tr. 66.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as a materials handler/unloader, machine operator, kitchen helper, and stocker.  (*Id.*)

### B.  Medical Evidence

Contrary to this Court's initial order, Plaintiff did not include a Statement of Facts section in his Brief on the Merits.[1]  Accordingly, in summarizing the relevant medical

---

[1]    The Court reminds Plaintiff that the Magistrate Judge's initial order in this case instructs that Plaintiff's Brief shall cite, by exact and specific transcript page number, all relevant facts in a "Facts" section.  (Doc. No. 8.)  Plaintiff has not been excused from complying with this order.  The Court will not cull

2

evidence, the Court relies heavily on the facts the Commissioner has provided in her Brief on the Merits.

### 1.    Medical Reports

In his disability application, Plaintiff did not claim disability based on any mental impairments.  (Tr. 199.)  Rather, he claimed that he was disabled from his enlarged heart, high blood pressure, hip and back problems, and migraines.  (*Id.*)  In his appeal, however, Plaintiff primarily challenges the ALJ's determination of his mental impairments.  As the Commissioner notes, Plaintiff's medical treatment records relate almost exclusively to his physical conditions.  School records indicate that in 1979, when Plaintiff was 16-years-old, he had a full scale IQ score of 69 and took special education courses.  (Tr. 265.)  In 2011, Plaintiff was assessed with adjustment disorder with mixed anxiety and depressed mood.  (Tr. 859.)  Other than scarce school records and a remote treatment note from 2011, the record is bereft of evidence relating to any psychiatric conditions.

### 2.    Agency Reports

Plaintiff underwent a consultative examination with A. E. Virgil, Ph.D., in March 2010.  (Tr. 559-563.)  When asked why he was disabled, Plaintiff replied, "Uhm, I got heart problems.  Back, hip. Stressed."  (Tr. 559.)  Plaintiff reported that he had completed the

---

through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.  *See Centerior Serv. Co. v. ACME Scrap Iron & Metal*, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).  The Court expects Plaintiff's counsel to properly set forth all facts relevant to his arguments in future briefs unless otherwise directed by Court order.

eleventh grade and attended special education classes.  (Tr. 560.)  He also noted that he

had been in and out of jail and prison all of his life for possession of drugs and drug

trafficking.  (*Id.*)  Plaintiff denied any psychiatric treatment history but stated that he

participated in a drug treatment program in 2004.  (*Id.*)  On examination, Plaintiff's speech

was understandable and his thought content was logical and coherent.  (*Id.*)  He

responded appropriately, exhibiting no apparent difficulty comprehending inquiries.  (*Id.*)

He reported feeling depressed because he had no income and needed to rely on his

parents for help.  (Tr. 561.)  Dr. Virgil noted that Plaintiff denied any hallucinatory or

delusional activity and displayed no such activity during the examination, and that a

psychotic disorder was not otherwise evidenced.  (*Id.*)  Plaintiff reported being suspicious

of others and feeling as if he is being watched and talked about by other people.  (*Id.*)

Plaintiff reported that he lived with his eight-year-old daughter.  (*Id.*)  When asked

about his daily activities, Plaintiff stated that he looked for jobs, watched a lot of television,

did household chores, cooked, and shopped independently.  (*Id.*)  Plaintiff reported having

friends at church and attending religious services once weekly.  (*Id.*)

Testing revealed that Plaintiff had a Global Assessment of Functioning (GAF) score

of 55.[2]  (Tr. 563.)  However, Dr. Virgil noted that from a functional perspective, Plaintiff was

able to carry out in home and community activities of daily living and therefore his

---

[2]      The GAF scale incorporates an individual's psychological, social, and
occupational functioning on a hypothetical continuum of mental health illness
devised by the American Psychiatric Association.  A GAF score between 51
and 60 indicates moderate symptoms or moderate difficulty in social,
occupational, or school functioning.

4

functional GAF was estimated to be a 62,[3] indicating mild symptoms.  (*Id.*)  Plaintiff had a full scale IQ score of 60.  (Tr. 562.)

Dr. Virgil assessed depressive disorder, not otherwise specified (NOS); borderline intellectual functioning (BIF); and personality disorder NOS.  (Tr. 562.)  He opined that Plaintiff was mildly impaired in his ability to cooperate with supervisors and/or coworkers in a normally pressured work setting; mildly impaired in his ability to understand, remember, and follow instructions due to his BIF, but capable of understanding, remembering, and following simple, and some multi-step, repetitive tasks; moderately impaired in his ability to maintain attention, concentration, persistence, and pace to perform routine tasks; and moderately impaired in his ability to withstand the stress and pressures associated with day-to-day work activity.  (Tr. 563.)

On March 21, 2010, state agency medical consultant Carl Tishler, Ph.D., rendered an opinion regarding Plaintiff's residual functional capacity (RFC).  Dr. Tishler opined that Plaintiff was moderately limited in the following areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting.  (Tr. 578-579.)  Dr. Tishler noted that Plaintiff did not allege a mental impairment but took special education

---

[3]     A GAF score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning.

classes while in school, and that Plaintiff denied any psychiatric treatment history.  (Tr. 580.)  Dr. Tishler also noted that Plaintiff had trouble with concentration and withstanding stress, he had mild limitations in relating to others and understanding and following instructions, and he was able to carry out in home and community activities of daily living (ADL) tasks.  (Tr. 581.)  Furthermore, Dr. Tishler opined that Plaintiff retained the ability to understand, remember, and carry out some moderately complex routine tasks in a relaxed setting; he could handle occasional and superficial interactions with others, including the public; and he should not be expected to handle frequent changes, frequent conflict, or fast-paced production demands.  (*Id.*)

## C.  Hearing Testimony

### 1.  Plaintiff's Hearing Testimony

At the time of his hearing, Plaintiff was 49-years-old and weighed 284 pounds.  (Tr. 20.)  He was single and had five children.  (*Id.*)  He lived by himself in an apartment owned by his father and received $115 per month from welfare and $200 per month in food stamps.  (Tr. 21.)  Plaintiff lost his driver's license in 2005 for failing to pay child support.  (*Id.*)  He depended on friends and relatives for transportation.  (*Id.*)

Plaintiff testified that he could not work due to chest pains and a total hip replacement.  (Tr. 25.)  He had constant pain in his right and left hips.  (Tr. 32.)  He also had high blood pressure.  (Tr. 29.)  Plaintiff took several medications but testified that he did not experience any side effects from them.  (*Id.*) He stated that he had never had any mental health treatment.  (Tr. 31.)

Plaintiff could lift a gallon of milk.  (Tr. 34.)  He could reach objects that were in front of him but had trouble bending down to lift things.  (Tr. 35.)  He testified that he could not

bend at the waist and had not been able to tie his shoes for the past two years.  (*Id.*)  He could not kneel down without pain.  (*Id.*)  Plaintiff stated that his memory and concentration were average.  (*Id.*)  He was able to take care of his personal needs such as grooming, bathing, and dressing.  (Tr. 36.)  Plaintiff did not cook, clean, or go grocery shopping.  (Tr. 37.)  He occasionally visited with friends and family.  (*Id.*)

### 2.    Vocational Expert's Hearing Testimony

Selena Earl, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience.  (Tr. 41.)  The individual would be limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally; could stand and walk two out of eight hours; and could sit six out of eight hours.  (Tr. 41-42.)  The individual could occasionally: operate right foot controls; climb ramps and stairs; and stoop, kneel, crouch, crawl, and balance.  (Tr. 42.)  The individual could never climb ropes, ladders, and scaffolds and should avoid all exposure to hazards.  (*Id.*)  Furthermore, the individual could perform only simple, routine, repetitive tasks.  (Tr. 43.)  The VE testified that the hypothetical individual could perform such jobs as a shipping receiving weigher (Dictionary of Occupational Titles ("DOT") 222.387-074), a small parts assembler (DOT 706.684-022), and an electronics worker (DOT 726.687-010).

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically

7

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.     SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social

8

Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date.

3.      The claimant has the following severe impairments: lower extremity disorders; spinal disorders; obesity; borderline intellectual functioning; cardiovascular disorders; tension headaches; personality disorder; polysubstance abuse; and an adjustment disorder with mixed anxiety and a depressed mood.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can stand or walk for two of eight hours; he can occasionally operate foot controls with his right lower extremity; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, and balance; he must avoid all exposure to hazards; and he is limited to simple, routine, repetitive tasks.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born in October 1962 and was 45-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Act, from July 1, 2008, through the date of this decision.

9

(Tr. 58-67.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in Finding that Plaintiff did not Meet Listing 12.05.

Plaintiff argues that the ALJ erred in finding that he did not meet Listing 12.05(B) for

intellectual disability.  According to Plaintiff, he had a valid performance IQ score of 56 as well as deficits in adaptive functioning manifested before age 22, and therefore the ALJ should have determined that he met all of the criteria for Listing 12.05(B).  For the following reasons, Plaintiff's argument lacks merit.

Listing 12.05 sets forth the requirements for finding disability resulting from "intellectual disability."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In its first paragraph, Listing 12.05 provides the diagnostic description of the impairment:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Id.  In other words, in order to satisfy the requirements of the Listing, an individual must, first, demonstrate the onset of the deficits described in the diagnostic description prior to age 22, and, second, satisfy the requirements of any one of the four subsections.  See Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 676 (6th Cir. 2009) (noting that an IQ below 70 was not sufficient on its own to satisfy Listing 12.05, as the claimant must "still satisfy the three-prong definition of mental retardation" and one of the subsections).  As relevant to this case, an individual may satisfy the requirement of subsection (B) by demonstrating a "valid verbal, performance, or full scale IQ of 59 or less."  Id.

Here, the ALJ determined that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listing 12.05.  (Tr. 59.)  The ALJ explained:

> I have fully considered listing 12.05.  The claimant's representative argues that the claimant meets listing 12.05 due to his IQ scores

11

and limitations from his other impairments (Ex. 20E). I do not find this persuasive, for the reasons discussed below. As discussed, the claimant's tenth grade intelligence testing revealed an IQ of 69. At the time, the claimant was fourteen years old. The claimant was noted to have a social age equivalent of twelve years old. His teacher noted that his adaptive behaviors fell between the thirteen and fourteen age year levels. It was noted that the claimant could make purchases and tell if he had correct change, travel about his hometown freely, engage in adolescent group activities, and care for himself alone or care for others, among other abilities. Ex. 17E). Based on the claimant's school records, I do not find deficits in adaptive functioning initially manifested during the developmental period. Therefore, the claimant is unable to meet or equal listing 12.05, as he has not satisfied the preamble of this listing.

(Tr. 61.) The ALJ does not address or take issue with Plaintiff's performance IQ score of 56 from March 2010. (Tr. 562.) Rather, the ALJ bases her decision that Plaintiff does not meet Listing 12.05 on her conclusion that Plaintiff did not have significant sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. Accordingly, the issue becomes whether substantial evidence supports the ALJ's determination that Plaintiff did not satisfy the threshold diagnostic description of Listing 12.05.

"Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 328, 113 S.Ct. 2637, 125 L.Ed.2d (1993)). Here, Plaintiff maintains that his school records indicate that he had deficits in adaptive functioning initially manifested during the developmental period. Plaintiff was placed in special education classes after receiving D's and F's in most subjects in the first and second grades. (Tr. 262.) Additionally, psychological testing from 1979, when Plaintiff was 16-years-old, revealed that Plaintiff had a mental age of 11 and a full scale IQ

12

score of 69.  (Tr. 265.)  Notes from the testing state:

> Relative to [Plaintiff's] total ability, he exhibited a good vocabulary, poor auditory memory, good visual memory, good practical judgment and good logical reasoning. [Plaintiff] achieved an oral reading grade score at the second month of the fourth grade level, a spelling grade score at a beginning fourth grade level and a total arithmetic grade score at the seventh month of the fifth grade level as was measured by the Wide Range Achievement Test.  In arithmetic he was able to do addition, subtraction, and multiplication.  He exhibited some knowledge of fractions.
>
> ***
>
> [Plaintiff] obtained a social age equivalent of twelve years, no months as was measured by the Vineland Social Maturity Scale. His classroom teacher, Mr. Brown was the informant and he estimated that [Plaintiff's] adaptive behavior falls at around a 13 or 14 year level.   [Plaintiff] does not read on his own initiative, does not answer ads or make purchases by mail, does not enjoy books, newspapers nor magazines, does not perform responsible routine chores and does not follow current events.  He can make minor purchases and make sure that he has the correct change, goes about his home town freely, can look up names in the phone book and make phone calls, does do some simple creative work, can be left to care for himself or others, plays difficult games, exercises complete care of his dress, buys his own clothing accessories and engages in adolescent group activities.

(Tr. 265.)  Plaintiff argues that the description above shows that he demonstrated deficits in adaptive functioning prior to age 22, while the ALJ read the description as suggesting the opposite conclusion.

Here, substantial evidence supports the ALJ's conclusion that Plaintiff does not meet Listing 12.05.  As the ALJ noted, Plaintiff's school records, which are scarce, indicate that at the age of 16, Plaintiff could make purchases and determine if he had correct change; travel around his hometown freely; engage in adolescent group activities; buy his own clothing and accessories; play difficult games; look up names in the

13

phonebook; and care for himself alone or care for others.  (Tr. 61, 265.)  Plaintiff argues

that his school records also could support a finding that he met the diagnostic criteria of

Listing 12.05, such as indications that his adaptive behavior fell at around a 13 or 14 year

level when he was 16-years-old; he was in special education classes; he did not perform

responsible routine chores or follow current events; and he did not enjoy books,

newspapers, or magazines.   This is not, however, the appropriate standard to apply to the

ALJ's decision.  An ALJ's decision that is supported by substantial evidence will not be

overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594

F.3d at 512.  The Court finds no basis to conclude that the ALJ's decision regarding Listing

12.05 lacks the support of substantial evidence.  Accordingly, Plaintiff's first assignment of

error does not present a basis for remand.

> **2.      The ALJ's Residual Functional Capacity Failed to Account for
> Plaintiff's Moderate Limitations in Concentration, Persistence,
> and Pace.**

Plaintiff argues that the ALJ's RFC determination fails to account for all of his

mental limitations.  In her decision, the ALJ found that Plaintiff had moderate difficulties

with regard to concentration, persistence, or pace.  (Tr. 60.)  Furthermore, the ALJ gave

great weight to the opinions of state agency psychological consultants Drs. Virgil and

Tishler, who both opined that Plaintiff was moderately limited in that area.  (Tr. 65, 563,

578.)  Plaintiff argues that the ALJ's RFC does not properly account for his moderate

limitations in maintaining concentration, persistence, or pace.  For the following reasons,

Plaintiff's argument is well taken.

RFC is an indication of a claimant's work-related abilities despite his limitations.

*See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an

14

administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).
As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of
the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's
medically determinable impairments, both individually and in combination, S.S.R. 96-8p.
When determining a claimant's RFC, the ALJ is required "to consider the combined effect
of all of the claimant's impairments. . . ."  *Walker v. Sec'y of Health & Human Servs., 980
F.2d 1066, 1071 (6th Cir. 1992)*.

Here, Plaintiff contends that the ALJ's RFC determination is internally inconsistent
and unsupported by substantial evidence, because she failed to include restrictions to
accommodate Plaintiff's "moderate" mental limitations.  In making this argument, Plaintiff
cites to *Ealy v. Commissioner of Social Security, 594 F.3d 504 (6th Cir. 2010)*, to support
his contention that the ALJ's RFC does not sufficiently address Plaintiff's limitations in his
ability to maintain concentration, persistence, or pace.  In *Ealy*, the record showed that the
claimant had a limited ability to maintain attention over time, even when performing simple,
repetitive tasks.  *Ealy, 594 F.3d at 516*.  Specifically, a state agency psychological
consultant limited the claimant's ability to sustain attention to complete simple repetitive
tasks to "[two-hour] segments over an eight-hour day where speed was not critical."  *Id.*
The ALJ, however, limited the claimant only to simple, repetitive tasks without any
additional time-based limitations.  Accordingly, the Sixth Circuit found that the ALJ failed to
adequately capture the claimant's limitations in concentration, persistence, and pace.  *Id.*

*Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must
adequately describe a claimant's limitations in order to serve as substantial evidence in
support of the ALJ's conclusions.  *Id. at 517*.  However, *Ealy* "does not require further

15

limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at \*4 (N.D. Ohio Oct. 18, 2011) (Boyko, J.).  Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.* at 4.

Here, the record supports Plaintiff's contention that the ALJ erred by failing to incorporate speed- and pace-based restrictions into her RFC determination.  Dr. Tishler opined that Plaintiff was moderately limited in his ability to maintain concentration, persistence, and pace to perform routine tasks, and that he should not be expected to handle frequent changes, frequent conflict, or fast-paced production demands.  (Tr. 580-581.)  The ALJ explicitly acknowledged this opinion and afforded it great weight, noting that it was uncontradicted and consistent with the record evidence.  (Tr. 65.)   Moreover, the ALJ specifically noted in her Step Three analysis that Plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace.  (Tr. 60.)  The ALJ did not, however, explain why her RFC finding omitted speed- and pace-based restrictions completely.  Instead, the ALJ purports to have believed that she accommodated those restrictions by limiting Plaintiff to simple, routine, repetitive tasks.  Under *Ealy,* restricting a claimant to work that is simple, routine, and repetitive does not necessarily address Plaintiff's moderate limitations in his ability to maintain concentration, persistence, or pace.  As a result, Plaintiff's argument that the ALJ's RFC did not adequately account for his mental limitations presents a basis for remand.

### 3.    The ALJ Erred in Finding that Plaintiff was Capable of

16

**Performing Work at the Light Exertional Level.**

Plaintiff argues that the ALJ should have found that he was limited to sedentary, rather than light, work because the ALJ's RFC determination limits Plaintiff to standing or walking for two of eight hours. For the following reasons, Plaintiff's argument is not well taken.

The Social Security Regulations provide that, typically, a job is considered "light" when it requires a good deal of walking or standing. SSR 83-10 (S.S.A. 1983). The Rulings further provide, however, that a job may also be considered "light" "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." *Id.* Here, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who would be limited to, *inter alia*, work involving standing and walking for two hours out of an eight-hour day and sitting for six hours out of an eight-hour day. (Tr. 42.) In response to the hypothetical, the VE stated: "I would use a sit/stand option with that for the – at the light level with needing to sit at least six hours." (*Id.*) The VE then identified three jobs the individual could perform that were at the light exertional level and that would accommodate a sit/stand option. (*Id.*) In describing the availability of the identified jobs in Ohio, the VE reduced the numbers to account for the sit/stand option. (Tr. 42-43.) In her decision, the ALJ relied on the VE's testimony in making her Step Five finding, explaining:

> I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of unskilled light representative occupations in the national economy and regional economy of Ohio, allowing a sit/stand option, such as: (1) shipping

> receiving weigher (222.387-074), 8,697 nationally/926 regionally;
> (2) small parts assembler (706.684-022), 17,168 nationally/1,565
> regionally;  and  (3)  electronics  worker  (726.687-010),  9,650
> nationally/520 regionally.  These job numbers represent reduced
> numbers due to the sit/stand option.
>
> Pursuant to SSR 00-4p, I have determined that the vocational
> expert's testimony is consistent with the information contained in
> the Dictionary of Occupational Titles.  Although a sit/stand option
> is  not  discussed  in  the  Dictionary  of  Occupational  Titles,  it  is
> based on her experience.
>
> Based on the testimony of the vocational expert, I conclude that,
> considering the claimant's age, education, work experience, and
> residual functional capacity, the claimant is capable of making a
> successful  adjustment  to  other  work  that  exists  in  significant
> numbers in the national economy.

(Tr. 66-67.)  Thus, the ALJ explained that she relied greatly on the VE's testimony to

determine that there are a significant number of jobs in the national economy that Plaintiff

can perform despite his limitation to standing/walking for two hours in an eight hour

workday.

Social Security Ruling 83-12 states that "most jobs have ongoing work processes

which demand that a worker be in a certain place or posture for at least a certain length of

time to accomplish a certain task.  Unskilled types of jobs are particularly structured so

that a person cannot ordinarily sit or stand at will."  SSR 83-12.  The Ruling also states,

however, that in cases of unusual limitation of ability to sit or stand, a vocational expert

should be consulted to clarify the implications for the occupational base.  Id.  Here, the ALJ

asked the VE to consider a hypothetical individual who would be capable of a limited range

of light work where standing and walking would be limited to two out of eight hours.  (Tr.

42.)  The VE opined that there are jobs that an individual with such limitations could

perform.  (Tr. 42-43.)  The VE reiterated that the jobs she identified would be available with

18

a sit/stand option, and she reduced the number of available jobs to account for that.  (*Id.*)
In her decision, the ALJ explained exactly why she found this testimony to be both credible
and reliable.  (Tr. 67.)

 The ALJ has the responsibility of evaluating a witness's credibility, including the
credibility of the VE.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).
Furthermore, Plaintiff was represented by counsel at his hearing and was afforded an
opportunity at that time to question the VE about any perceived inconsistencies in her
testimony.  The ALJ is under no obligation to investigate the accuracy of the VE's
testimony beyond the inquiry mandated by Social Security Regulation 00-4p.  It is the
responsibility of plaintiff's counsel to challenge the accuracy of the VE's testimony through
cross-examination of the VE.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th
Cir. 2009).  "The fact that plaintiff's counsel did not do so is not grounds for relief."  *Id.*; *see
also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an
explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on
his behalf) noticed the conflict and asked for substantiation.  Raising a discrepancy only
after the hearing, as Donahue's lawyer did, is too late.").  *But see Overman v. Astrue*, 546
F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so
obvious during the VE's testimony that the ALJ should have noticed them and elicited
reasonable explanations).

 Moreover, even if the ALJ erred in finding that Plaintiff was limited to light, rather
than sedentary, work, that error was harmless.  At Plaintiff's hearing, the ALJ asked the VE
whether there were jobs available at the sedentary level that a hypothetical individual of
Plaintiff's age, education, and RFC could perform, and the VE responded that the

19

individual could perform such jobs as a charge account clerk, a surveillance system monitor, and a check weigher.  (Tr. 43.)  Although federal courts cautiously apply the harmless error analysis in the context of administrative review, this Court has concluded that the analysis is appropriate where, "'based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10-CV-1196, 2011 WL 2461339 * 10 (N.D. Ohio June 17, 2011) (White, Mag. J.) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)); *see also Darabed v. Astrue*, No. 1:10-CV-2626, 2011 WL 7456148, *6 (NM.D. Ohio Dec. 6, 2011) (Burke, Mag. J.) ("Application of harmless error may be appropriate where a review of the material that the ALJ did consider leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner.")  Here, had the ALJ determined that Plaintiff was capable of a limited range of sedentary, rather than light, work, that determination would not change the outcome of Plaintiff's case, as the VE testified that there were a significant number of jobs available for a person with Plaintiff's RFC who would be limited to sedentary work.  (Tr. 43.)  Accordingly, Plaintiff's third assignment of error does not present a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.  On remand, the ALJ shall clearly address Plaintiff's limitation in his ability to maintain concentration, persistence, or pace, and accurately account for any limitation the ALJ finds in that area in Plaintiff's RFC.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 24, 2014